NO. 4-94-0712

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BAILEY AND ASSOCIATES, INC., )  Appeal from

Plaintiff-Appellee and )  Circuit Court of

Cross-Appellant, )  Sangamon County

v. )  Nos. 90MR328

ILLINOIS DEPARTMENT OF EMPLOYMENT )       92MR314

SECURITY and LOLETA DIDRICKSON, in )       93MR219

her capacity as Director of Employment )

Security, )  Honorable

Defendants-Appellants and )  Richard J. Cadagin,

Cross-Appellees. )  Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

This appeal involves a dispute between the plaintiff, Bailey and Associates, Inc. (Bailey), and the defendants, Illi­nois Department of Employment Security (Department) and Lole­ta A. Didrickson, its previous Director.  At issue in this case are the Director's determinations under the Unem­ploy­ment In­sur­ance Act (Act) (see Ill. Rev. Stat. 1991, ch. 48, par. 300 
et
 
seq
.), hold­ing Bailey had to pay con­tributions under the Act for sales­peo­ple who sold mem­berships in camp­grounds owned and operat­ed by Bailey.  In three decisions the Direc­tor determined these indi­vidu­als were em­ployees of Bailey, rather than exempt as indepen­dent con­trac­tors (see Ill. Rev. Stat. 1991, ch. 48, par. 322), and con­se­quent­ly were not ex­empt for the pur­poses of unem­ploy­ment con­tri­bu­tions.  
Direc­tor of Employment Security v. Bailey & Asso­ciates, Inc.
, Ill. Dept. Employment Sec. Nos. 87-H-92, H-13565 (Sep­tem­ber 19, 1990); 
Di­rector of Employment Security v. Bailey & Asso­ci­-

ates, Inc.
, Ill. Dept. Employment Sec. No. H-19603 (October 5, 1992); 
Director of Employment Security v. Bailey & Asso­ci­ates, Inc.
, Ill. Dept. Employment Sec. No. H-24421 (July 9, 1993)
.  
Bailey filed a com­plaint in the cir­cuit court seek­ing re­view of each deci­sion.  After consol­ida­tion, the cir­cuit court af­firmed in part and re­versed in part.  Defen­dants ap­peal the por­tion of the circuit court's order revers­ing the Director's deci­sions.  Bailey cross-appeals from the por­tion of the circuit court's order af­firming the Director's deci­sions.  We affirm in part and reverse in part.

I.  BACKGROUND

The facts are not in dispute.  Bailey owns and oper­ates two membership resort campgrounds.  A member­ship enti­tles a mem­ber to use campground facilities and services.  Bailey does not sell the mem­ber­ships, rely­ing instead on a sales force.

Salespeople are compensated on a commission basis.  Bailey never withheld income or social security taxes from their commissions and always reported their commissions on forms ap­plicable to independent contractors.  Once all the mem­ber­ships are sold, Bailey earns reve­nue from mainte­nance fees, mem­bership dues, con­cessions, rent­als, and assess­ments.

Bailey's salespeople worked at their own pace, set their own hours, and did not have a dress code.  They were free to conduct their busi­ness anywhere.  There were no sales meet­ings.  Work­ing for an­oth­er employer was al­lowed.  The sales­peo­ple were restricted from work­ing for Bailey's competi­tors.  Sales­people were free to em­ploy any meth­ods of sales, and sell at any loca­tion, as long as they used sales con­tracts pro­vid­ed by Bail­ey, did not misrep­re­sent the terms of membership, and made sales at pric­es within approved ranges.

They were required to pay for sales leads received from Bailey and bore expenses for promotional materials, entertain­ment, offices, telephones, supplies, automobiles, lead genera­tion, additional workers, and all other costs.

Salespeople bore full responsibility for every mem­ber­ship they sold until three timely payments had been made on the contract.  They were required to estab­lish and maintain re­serve accounts out of their commissions with Bailey, which were charged if a customer failed to pay.  They were also re­quired to at­tend an initial three-day product infor­mation semi­nar.

Un­der the terms of the contract between Bailey and its sales force, salespeople agreed to expend at least 20% of their net commissions for the purpose of promoting the market­ing and sale of memberships, including the costs of promo­tional mate­ri­als, sales leads, and travel or enter­tainment expens­es.  They had to submit a statement of expenditure to Bailey biannu­ally.  They had to use sales contracts prepared and sup­plied by Bailey.  During the three-day rescission period, Bailey's employees called new mem­bers to make sure no misrepresentations were made by the sales­peo­ple.

The Department issued separate notices of determination and assessment and demand for payment to Bailey for unpaid unem­ploy­ment contribu­tions and interest for 1984 through 1988, for 1989, and for 1991.  These notices were based on an audit finding Bailey liable for contributions because the De­part­ment deter­mined Bailey's sales force consisted of employ­ees, rath­er than indepen­dent con­trac­tors.  Bailey filed timely pro­tests and peti­tions for admin­istra­tive hearings for all the no­tices, except for the fourth quar­ter of 1988.

After administrative hearings, the Director's represen­ta­tive in each case found the services performed by the salespeo­ple for Bailey were not exempt under section 212 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 322), which de­fines inde­pen­dent con­trac­tors.  The rep­re­sen­ta­tives found the salespeo­ple were em­ploy­ees of Bailey.

The repre­senta­tive in each case also found the sales­peo­ple were not exempt from cover­age under the Act by vir­tue of sec­tion 3(5) of the Illinois Membership Campground Act (Member­ship Act) (Ill. Rev. Stat. 1987, ch. 29, par. 903(5)), which pur­port­ed to de­fine camp­ground mem­ber­ship sales force as indepen­dent con­trac­tors, and is one of the subjects of this appeal.  In each case, the Di­rec­tor adopt­ed the rec­om­mend­ed decisions of her rep­re­senta­tives.

In October 1990, November 1992, and August 1993, Bailey filed complaints for administrative review of the Director's decisions in the circuit court.  Case No. 90-MR-328 involves the assessment for 1984 through 1988; No. 92-MR-314 is the assessment for 1989; and No. 93-MR-219 is for 1991.  These cases were con­soli­dat­ed in July 1993.  In July 1994 the circuit court held as fol­lows:  (1) sales­peo­ple were legally and factually inde­pen­dent con­trac­tors, both by vir­tue of section 3(5) of the Mem­ber­ship Act and on the facts; (2) sec­tion 3(5) of the Member­ship Act was pro­spec­tive and ap­plied to this case only from September 24, 1987, the time when the Membership Act became ef­fective; and (3) Bailey failed to timely file a pro­test in re­sponse to the notice of determina­tion for the fourth quarter of 1988.  The Depart­ment ap­peals, and Bailey cross-ap­peals.

In related administrative proceedings, three former Bailey employees applied for unemployment compensation.  In one of these cases, a former salesman was found to be an employee and award­ed unem­ploy­ment bene­fits; Bailey did not seek re­view of this deci­sion, and it became fi­nal.  

II.  ANALYSIS

A.  Standard of Review

The findings and conclusions of administrative agencies on questions of fact are considered 
prima
 
facie
 true and correct and therefore a reviewing court may reverse them only if those findings are against the manifest weight of the evidence.  A deci­sion is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent.  Ill. Rev. Stat. 1991, ch. 110, par. 3-110; 
Jack Bradley, Inc. v. De­part­ment of Em­ploy­ment Secu­ri­ty
, 146 Ill. 2d 61, 73, 585 N.E.2d 123, 128 (1991); 
Blair v. Depart­ment of Em­ployment Secu­rity
, 168 Ill. App. 3d 537, 539, 522 N.E.2d 834, 836 (1988).  How­ev­er, on ques­tions of law, agen­cies are not enti­tled to such def­er­ence, and an erro­neous inter­preta­tion of a statute will be re­versed.  
Car­son Pirie Scott & Co. v. State of Illinois Depart­ment of Em­ployment Secu­rity
, 131 Ill. 2d 23, 34, 544 N.E.2d 772, 777 (1989).  Even when the issue spe­cifi­cally includes an in­ter­preta­tion of a stat­ute, though, agen­cies receive 
some
 defer­ence, for reasons of their expertise and expe­rience, espe­cially if the statute in question is their en­abling statute.  The in­ter­pre­ta­tion will be over­turned only if it is clear­ly erro­ne­ous.  
City of Decatur v. Amer­ican Federa­tion of State, County, & Mu­nicipal Employees, Local 268
, 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (1988).  Where, as here, the facts are not in dispute, their legal effect is a mat­ter of law.  
Fitzpatrick v. Human Rights Comm'n
, 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491 (1994).

B.  Membership Act

The Department ap­peals the circuit court's holding section 3(5) of the Mem­bership Act unambiguously provides  Bail­ey's salespersons are independent contractors.  The circuit court did not err.  The pri­ma­ry rule of sta­tuto­ry con­struc­tion is to give ef­fect to leg­isla­tive in­tent.  
Solich v. George & Anna Portes Cancer Pre­ven­tion Center of Chi­ca­go, Inc.
, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994).  The primary source of the stat­ute's meaning is its lan­guage.  
Solich
, 158 Ill. 2d at 81, 630 N.E.2d at 822.  We review issues of statutory con­struc­tion 
de
 
novo
.  See 
City of Maroa v. Illinois Cen­tral R.R.
, 229 Ill. App. 3d 503, 505, 592 N.E.2d 660, 662 (1992).

The statute in question, the Membership Act, as amended effective September 24, 1987 (Pub. Act 85-812, §1, eff. September 24, 1987 (1987 Ill. Laws 3413)), conclu­sive­ly re­solved the is­sue.  It pro­vid­ed:

"'Salesperson' means any person, other than a Membership Camping Operator, who is engaged in obtaining commitments of persons to enter into Membership Camping Con­tracts by mak­ing direct sales presentations to such per­sons.  
For
 
purposes
 
of
 '
The
 
Unem­ployment
 
Insurance
 
Act
', approved June 30, 1937, as amended, 
a
 
salesperson
 
under
 
this
 
Act
 
is
 
an
 
independent
 
contractor
 and not considered to be engaged in employment unless such sales­person has tax withheld by a Mem­bership Camp­ing Operator pursuant to Section 701 of the Illinois Income Tax Act."  (Empha­sis add­ed.)  Ill. Rev. Stat. 1987, ch. 29, par. 903(5).

The Department argues the phrase "unless such sales­per­son has tax withheld" should be interpreted as "un­less such salesper­son 
should
 have tax legally withheld."

The Department's position is as follows:  if there is a conflict between two statutes, courts must interpret the statutes in a manner so as to avoid inconsistency and give effect to both statutes.  See 
Stone v. Department of Employment Security Board of Review
, 151 Ill. 2d 257, 262, 602 N.E.2d 808, 810 (1992).  The pur­pose of the Act is to relieve the "[e]conomic insecurity due to in­vol­untary unemployment."  Ill. Rev. Stat. 1991, ch. 48, par. 300.  If sec­tion 3(5) of the Membership Act is con­strued to mean what it says on its face, the De­part­ment ar­gues, an oper­ator of a camp­ground could defeat the purpose of the Act by re­fus­ing to with­hold tax­es, even if this refusal violated the Illi­nois Income Tax Act (Tax Act) (Ill. Rev. Stat. 1991, ch. 120, par. 1-101 
et
 
seq
.).  Sec­tion 701 of the Tax Act (Ill. Rev. Stat. 1991, ch. 120, par. 7-701) re­quires an em­ploy­er con­duct­ing busi­ness in Illi­nois to with­hold taxes on com­pensa­tion if to do so is re­quired under section 3401 of the United States Inter­nal Revenue Code (Code) (26 U.S.C. §3401 (1988)).  Sec­tion 3401 of the Code re­quires an em­ployer to withhold income taxes from com­pen­sa­tion paid to an "em­ployee."  26 U.S.C. §3401 (1988).  In de­ter­min­ing wheth­er an individ­u­al is an em­ploy­ee under the feder­al law, the most impor­tant con­sider­ation is the employer's right of con­trol.  See 26 C.F.R. §31.3401(c)-1(b) (1995).  There­fore, argues the De­part­ment, the determination of whether Bailey should have with­held taxes hinges on the deter­mi­nation of whether his sales­people were "em­ployees" under feder­al law.  Since the De­partment deter­mined Bailey's sales­people were "em­ploy­ees" under both fed­eral and Illinois law, under the De­part­ment inter­preta­tion Bailey should have with­held their tax­es; there­fore, section 3(5) of the Member­ship Act af­fords Bailey no re­lief.

We find this reasoning unpersuasive.  We con­clude sec­tion 3(5) of the Membership Act unambiguously pro­vides for an inde­pen­dent contractor treatment of Bailey's sales force.  We note the circuit court held the salespeople were legally and factually independent contractors both because of section 3(5) and the facts presented.

The Department's argument is not logically sound for a number of reasons.  First, by de­claring campground salespeo­ple 
should
 have their taxes with­held, the Depart­ment in effect ren­ders the entirety of section 3(5) of the Membership Act a nul­li­ty.  No camp­ground sales­per­son, under the Department's inter­pre­ta­tion, can 
ever
 be an inde­pen­dent contrac­tor.  This is an ab­surd re­sult, and we must pre­sume the leg­is­lature did not intend ab­surdi­ty.  
Loyola Acade­my v. S&S Roof Mainte­nance, Inc.
, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1216 (1992); 
People v. Liberman
, 228 Ill. App. 3d 639, 647, 592 N.E.2d 575, 581 (1992).

Sec­ond, differ­ent camp­ground opera­tors may have differ­ent legiti­mate reasons for treat­ing their sales force either as employees or as indepen­dent con­trac­tors.  Section 3(5) of the Membership Act allows them to engage their sales force as employ­ees or as independent contractors.  In some instances, a camp­ground operator may treat a salesperson as an employee and the surrounding circumstances will demonstrate the salesperson 
is
 
an
 
employee
.  The campground operator would then have to withhold income tax and make unemployment contributions.

Final­ly, we disagree with the Director, who asserted the legislature did not express its intent clearly enough:

"Section 3(5) of the Membership Campground Act is poor­ly draft­ed.  A much clear­er ex­pres­sion of legis­lative intent is neces­sary to conclude that the General Assem­bly intend­ed to exempt camp­ground mem­bership salesper­sons from the broad remedial purposes of the Unem­ployment Insur­ance Act."  
Director of Employment Security v. Bailey & Associates, Inc.
, Ill. Dept. Employment Sec. No. H-24421 (July 9, 1993).

How else can the legislature express its intent to exempt "camp­ground membership salespersons from the broad remedial purposes of the Unemployment Insurance Act" (
Director of Employment Secu­rity v. Bailey & Associates, Inc.
, Ill. Dept. Employment Sec. No. H-24421 (July 9, 1993)), ex­cept to say "[f]or pur­pos­es of 'The Unem­ploy­ment In­sur­ance Act' *** a sales­person under [the Member­ship Act] is an indepen­dent contrac­tor" (Ill. Rev. Stat. 1987, ch. 29, par. 903(5))?  The Department's inter­preta­tion of sec­tion 3(5) of the Mem­ber­ship Act is in­sup­port­able.  See 
Car­son Pirie Scott
, 131 Ill. 2d at 34, 544 N.E.2d at 777; 
City of Decatur
, 122 Ill. 2d at 361, 522 N.E.2d at 1222 (clearly erro­ne­ous interpreta­tions of statutes must be re­versed).  The circuit court was cor­rect in re­versing the Department's deci­sions and is affirmed.

C.  Collateral Estoppel

The Department, nevertheless, argues section 2202 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 682) pre­cludes Bailey from relitigating the status of his sales force.

At one previous proceeding the Department found one Bailey salesman an employee.  Bailey failed to seek a re­view of this deci­sion.  Consequently, argues the Depart­ment, Bailey is es­topped from relitigating the issue of the sta­tus of his sales force.

At issue here is sec­tion 2202 of the Act, which pre­vents an "employ­ing unit" such as Bailey from relitigating cer­tain issues already decid­ed by the Depart­ment.  Ill. Rev. Stat. 1991, ch. 48, par. 682.  Sec­tion 2202 of the Act af­fords pre­clu­sive ef­fect where (1) the find­ings are made in a prior pro­ceeding be­fore a claims adju­dica­tor, ref­eree, or the board of review; and (2) the pro­ceeding resulted in a decision to allow unem­ploy­ment bene­fits to a claim­ant.  If these threshold require­ments are met, a find­ing that an em­ploying unit is an "employ­er" would have a preclu­sive ef­fect.

Such a final finding is preclusive not only with re­spect to a claimant, but also with respect to other individuals:

"If, after the hearing ***, the Director shall find that services were rendered for such employing unit by other individuals under circumstances substantially the same as those under which the claimant's services were performed, the finality of the findings made *** as to the status of the services performed by the claimant, shall extend to all such services rendered for such employ­ing unit ***."  Ill. Rev. Stat. 1989, ch. 48, par. 682.

The Department, in its decision as to the 1989 assess­ment, referred to three dif­fer­ent cases in which a Director's rep­re­sentative ruled former Bailey work­ers were em­ploy­ees, not inde­pendent con­trac­tors.  Only one of these deci­sions (De­part­ment case No. L-18-030, mailed September 19, 1990), how­ev­er, involved a sales­man (Larry Thompson) in cir­cum­stanc­es simi­lar to the in­stant case.  Bailey did not ap­peal this deci­sion, and it bec­ame fi­nal.  Bailey con­cedes it falls within the scope of sec­tion 2202 of the Act.  We hold, however, Bailey's failure to ap­peal does not estop it from challeng­ing the status of its sales force in the instant case.

Section 2202 of the Act essentially codifies the common law doc­trine of collateral estoppel in the unemployment compensa­tion context.  Our court defined collateral estoppel as a doc­trine barring relitigation of identical issues in a sub­se­quent action where (1) the issues in two cases are identi­cal; (2) a final judgment on the merits has been rendered; and (3) the party against whom estoppel is asserted is the same party (or a party in privity) and has had a full and fair opportunity to liti­gate the issue.  
Betts v. Manville Personal Injury Settle­ment Trust
, 225 Ill. App. 3d 882, 895, 588 N.E.2d 1193, 1201-02 (1992).

Bailey argues its stake in the Thompson matter was not large enough to provide an incen­tive to fully liti­gate the is­sue.  We agree.  Our supreme court re­cently cau­tioned against the unre­strained application of col­lat­eral estop­pel when consid­er­ations of fairness are present.  It stated we have "'broad discretion'" to ensure the applica­tion of collat­eral estoppel is not fundamen­tally unfair, even though the threshold requirements for it are otherwise satisfied.  
Herzog v. Lexington Township
, 167 Ill. 2d 288, 296, 657 N.E.2d 926, 930 (1995), quot­ing 
In re Owens
, 125 Ill. 2d 390, 399-400, 532 N.E.2d 248, 252 (1988).  As an exam­ple of un­fair­ness, our su­preme court re­ferred to a situa­tion where "[a] defen­dant may not have an incen­tive to fully litigate the prior suit if the damages in that case are small."  See 
Herzog
, 167 Ill. 2d at 296, 657 N.E.2d at 930.  
We find it would be fun­da­men­tally un­fair to estop Bailey from chal­lenging the Director's determina­tion, espe­cially in view of clearly ex­pressed legisla­tive intent.

Addi­tion­ally, applying section 2202 of the Act to pre­clude Bail­ey from clai­ming the independent contractor status to its sales force would lead to a result contrary to the express intent of the legisla­ture as evidenced in section 3(5) of the Member­ship Act.  Courts must har­mo­nize con­flict­ing stat­utes, if possi­ble.  
Wil­liams v. Illi­nois State Scholar­ship Com­m'n
, 139 Ill. 2d 24, 52, 563 N.E.2d 465, 478 (1990) (even when ap­par­ent con­flict exists, courts must con­strue statutes in harmo­ny with each oth­er).  Assuming 
arguendo
 sec­tion 2202 of the Act estops Bailey, sec­tion 3(5) of the Mem­ber­ship Act, as most re­cent, or more spe­cif­ic, pre­vails over sec­tion 2202 of the Act.  See 
Jahn v. Troy Fire Pro­tec­tion Dis­trict
, 163 Ill. 2d 275, 282, 644 N.E.2d 1159, 1162 (1994) (when choos­ing be­tween two stat­utes in direct con­flict, the more recent enactment generally will prevail as the later expres­sion of leg­islative intent); 
Brown v. Ma­son
, 132 Ill. App. 3d 439, 441, 477 N.E.2d 61, 63 (1985) (in cases of con­flict, specific stat­utory provisions pre­vail over general ones).

We note one of the central policies un­der­ly­ing col­lat­eral estop­pel is one of judicial economy.  
Osborne v. Kel­ly
, 207 Ill. App. 3d 488, 491, 565 N.E.2d 1340, 1342 (1991).  Be­cause the decision in question became final 
after
 the first of these pro­ceedings (No. 90-MR-328) com­menced, re­quir­ing Bailey to pro­ceed with its ap­peal would have led to duplicative pro­ceed­ings to deter­mine es­sentially the same issue.  Hypotheti­cal­ly, under the agen­cy in­terpretation of section 2202 of the Act, if 100 for­mer sales staff of Bailey ap­plied for unem­ploy­ment, Bailey would have had to main­tain 100 sepa­rate appeals, notwith­standing that a single issue was at the core of all the proceed­ings.  Moreover, it is conceiv­able the costs of maintain­ing the proceed­ings would have exceeded Bailey's financial stake in individual cases.

For the foregoing reasons, we hold the circuit court did not err in holding section 2202 of the Act does not col­lat­er­al­ly estop Bailey from maintaining the present ac­tion.

D.  Prospective or Retroactive Application

The circuit court held section 3(5) of the Member­ship Act had only pros­pective effect.  It therefore held sec­tion 3(5) of the Membership Act ap­plied only to services per­formed by Bail­ey's sales­people after Septem­ber 24, 1987, the date it became effec­tive.  Bailey argues sec­tion 3(5) of the Member­ship Act should apply ret­roactive­ly.  We agree.

As previously noted, the question of whether a stat­ute operates retroac­tive­ly or prospectively is one of legis­lative intent.  
Champaign County Nursing Home v. Petry Roofing, Inc.
, 117 Ill. App. 3d 76, 78, 452 N.E.2d 847, 849 (1983).  Gen­eral­ly, stat­utes are pre­sumed to have a prospec­tive effect.  
Rivard v. Chi­cago Fire Fighters Union
, Local No. 2
, 122 Ill. 2d 303, 308-09, 522 N.E.2d 1195, 1198 (1988).  However, this presump­tion of prospectivity does not apply to clarifica­tions of exist­ing law.  
Continental Illinois National Bank & Trust Co. v. Lenckos
, 102 Ill. 2d 210, 220, 464 N.E.2d 1064, 1068 (1984).

The question then becomes whether section 3(5) of the Membership Act added new substantive rights or merely clarified the ex­ist­ing law.  We find it was a mere clarification.

Generally, if the legislature passes an amendment con­tra­dict­ing a re­cent in­ter­pretation of a statute, it is "an indi­cation that such interpretation was in­cor­rect and that the amend­ment was enacted to clarify the legislature's orig­inal in­tent."  
Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund
, 155 Ill. 2d 103, 111, 610 N.E.2d 1250, 1253 (1993).  Our su­preme court made this observation in the context of a judi­cial inter­pretation, but the same reason­ing applies to the deci­sions of agencies.  The Department has consis­tently held camp­ground mem­bership sales personnel are not "independent con­trac­tors" (the Department's determination to find them "employ­ees" is exem­pli­fied by its refusal to accept the man­date of sec­tion 3(5) of the Membership Act).  It fol­lows the enactment of section 3(5) of the Membership Act was meant to correct the Department's inter­preta­tion and was there­fore a clarification.

Further, the scant legislative history of section 3(5)  of the Membership Act supports the supposition section 3(5) was not meant to fash­ion sub­stantive changes.  Thus, the sponsor of the legis­la­tion indi­cated it was merely a definitional provision.  85th Ill. Gen. Assem., House Proceedings, June 29, 1987, at 82 (statements of Representative Cullerton) ("[Sec­tion 3(5) of the Membership Act] de­fines sales person for pur­pos­es of [the] Unem­ploy­ment Compensa­tion Act").  
No­where in the de­bates of ei­ther house is there any indica­tion section 3(5) of the Mem­ber­ship Act was viewed as modi­fy­ing or hav­ing any ef­fect on sub­stan­tive rights.

The Department argues section 3(5) of the Membership Act added a pro­vi­sion "where none previously existed."  However, new provi­sions have often been found to clarify existing laws.  See, 
e.g.
, 
Lenckos
, 102 Ill. 2d at 219-20, 464 N.E.2d at 1068 (amend­ment to Tax Act "intended to clarify, rath­er than change, the existing law"); 
Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.
, 240 Ill. App. 3d 360, 363, 366-68, 608 N.E.2d 178, 180, 182-83 (1992) (amendment add­ing new section to Con­sum­er Fraud and Deceptive Business Practices Act clarified existing law); 
Rubin v. Marhsall Field & Co.
, 232 Ill. App. 3d 522, 531-32, 597 N.E.2d 688, 694 (1992) (amend­ment adding new section to Consumer Fraud and Deceptive Business Practices Act clari­fied ex­ist­ing law).

Next, the Department argues section 3(5) of the Member­ship Act con­tains no language indicating its retroactivity.  The Department's argu­ment is misplaced.  A statutory provision does not have to con­tain such language to be retroactive.  Otherwise, there would be no need to have a rule of construction indicating the presumption of pros­pectivity does not apply to clarifi­ca­tions of existing law.  
Lenckos
, 102 Ill. 2d at 220, 464 N.E.2d at 1068.  If the De­part­ment's position is adopted, the rule of con­struction would be su­perfluous.  This position finds support in the case law as well.  See 
Braun v. Retirement Board of the Firemen's Annu­ity & Bene­fit Fund
, 108 Ill. 2d 119, 126, 483 N.E.2d 8, 11 (1985) ("[a]l­though the amendment did not itself say that it was in­tend­ed to clarify rather than modify, the changes made were by way of clar­ifica­tion").

Finally, our supreme court has indicated the "sub­stance versus procedure" distinction is not helpful in the ret­ro­ac­tivity analysis.  Instead, the court chose the "vested right" test, under which a change is not really "retroactive" unless it af­fects a vested right.  If the change does not affect a vested right, then "the bet­ter ap­proach is to apply the law that ap­plies by its terms at the time of the ap­peal."  
First of Amer­ica Trust Co. v. Armstead
, 171 Ill. 2d 282, 289, 664 N.E.2d 36, 39 (1996).  Obvi­ous­ly, the De­part­ment does not have a "vested right" to treat camp­ground salespeo­ple either as em­ploy­ees or as inde­pen­dent contrac­tors.  Instead, the Depart­ment is to apply the law as passed by the legislature, which has spo­ken with suffi­cient clar­ity on this is­sue.

In sum, it is clear the legislature passed sec­tion 3(5) of the Membership Act because of the Department's insistence on treat­ing mem­ber­ship campground sales forces as employees.  The section was meant to be a clarification of existing law, rath­er than a sub­stantive provi­sion.  It also did not affect a vested right.  As such, it should have been given a retro­active applica­tion by the cir­cuit court in its re­view of the agency ac­tion.

E.  Determination for the Fourth Quarter of 1988

Bailey also appeals the circuit court's order insofar as it held it is precluded from challenging the Department's de­ter­mina­tion for the fourth quarter of 1988.  The cir­cuit court did not err.  At a hear­ing, the fol­low­ing dia­logue took place:

     "THE COURT:  All right.  First of all, as to if one protest was not timely made--and I don't know this--the Director went ahead and there was no motion to strike or the like and went ahead and heard it, and I don't think the Director on appeal here now can raise--

     ATTORNEY FOR THE DEPARTMENT:  Your Hon­or, if I can just interject.  If you read the Director's decisions which I'm sure you will, you will see in the Director's decision it does state that was not protested in a timely fashion.  It wasn't a matter of she took it up.  It was a matter of Bailey and Associ­ates did mention it, and the Director did address it in her decision that it was not timely.

     THE COURT:   Is that right?

     [Plaintiff's attorney]:  She said sim­ply that it was not timely but does not strike the objec­tions, Your Honor, or hold that they are invalid.

     THE COURT:  Well, if she said it was­n't time­ly filed, I'll go with her on that." 

Bailey argues it should not be precluded from chal­leng­ing the Department's determination with respect to the fourth quarter of 1988 because, it alleges, its protest was con­sidered "on the merits" by the Director.  Consequently, Bailey argues the Director's argument has been waived.  This con­ten­tion is with­out merit.

The Director's representative in his decision noted:   "[t]he petitioner [Bailey] timely filed its protests and peti­tions for hearing to all of the above determination [
sic
] and assess­ments except the one dated July 21, 1989, which was for the fourth quarter of 1988."  The Director, in affirming her repre­sentative, repeated: "[t]he petitioner [Bailey] timely filed its protest and petitions for hearing to all of the assess­ments ex­cept the assessment dated July 21, 1989, which was for the fourth quarter of 1988."  Other­wise, the record is devoid of any discus­sion of the late protest and the consequences of its late fil­ing.

It stands to reason, though, the Director's find­ing indicated she did not consider the untimely peti­tion.  If she did consider it, as Bailey argues, then the refer­ences to the late filing would have been superfluous.  Con­trary to Bailey's asser­tion, the evidence received at the rele­vant hearing did not in­clude evidence specifically relating to the fourth quarter of 1988.  The circuit court thus did not err in holding for the Department on this issue.

F.  Factual Status of Bailey's Sales Force

The Department cross-appeals the circuit court's order holding Bailey's salespeople were both factually and le­gally inde­pendent contractors.  Because the court correctly ap­plied sec­tion 3(5) of the Membership Act to the facts, concluding Bail­ey's sales­peo­ple are legally independent contractors, we need not reach the other issue.

III.  CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision on the following points:  (1) campground mem­ber­ship sales­per­sons are "indepen­dent contractors" by virtue of sec­tion 3(5) of the Member­ship Act; (2) sec­tion 2202 of the Act does not estop Bailey from chal­leng­ing the status of his sales force; and (3) Bailey failed to timely protest the agency's determina­tion for the fourth quar­ter of 1988.  We re­verse the cir­cuit court on the issue of pro­spec­tive ap­pli­ca­tion of section 3(5) of the Mem­ber­ship Act and hold it ap­plies retro­active­ly.

Affirmed in part; reversed in part.

GREEN, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent.

I disagree with the majority's holding that the ques­tion of whether Bailey's salespeople are independent con­trac­tors (and therefore Bailey need not pay contributions for purpos­es of unemployment insurance) depends on Bailey's 
choice
 not to with­hold Illinois income taxes from those individuals.  If the mem­bers of the sales force are employees, then Bailey is required to withhold income tax and to make unemployment contri­bu­tions.  Bailey has no choice in the matter, except to the ex­tent that Bailey is able to restructure its overall relationship with its salespeople so that they are not employees.  

An employer is required to make unem­ployment in­surance contribu­tions "with respect to wages payable for employ­ment."  820 ILCS 405/1400 (West 1994).  An employ­er is also re­quired to withhold income taxes from compensa­tion paid to an "employee."  Section 3(5) of the Membership Act provides that the same test that applies to income tax withholding applies to unemploy­ment insurance contributions.  Section 3(5) eliminates the possi­bility that someone in Bailey's position will be treated differently for income tax purposes than for unemployment insur­ance purposes, and eliminates the necessity for Bailey to liti­gate the issue with both the Director of the Department and the Director of the De­partment of Reve­nue (Revenue).  Under section 3(5), determina­tion of status as a nonemploy­ee for income tax purposes is binding for unemploy­ment insurance purpos­es.

The fact that Bailey has chosen not to withhold for income tax purposes does not end the matter.  The Director of Revenue may nevertheless determine that Bailey's salespeople are employ­ees and that Bailey is required to withhold.  Until that is done, however, the Director of the Department must accept the fact that none of the members of the sales force "has tax with­held by a Member­ship Camping Operator pursuant to Section 701 of the Illinois Income Tax Act."  Ill. Rev. Stat. 1987, ch. 29, par. 903(5).  According­ly, unless we accept the Director's argu­ment under section 2202 of the Act, each of the sales­per­sons in this case "is an inde­pen­dent con­trac­tor and not consid­ered to be en­gaged in employ­ment."  Ill. Rev. Stat. 1987, ch. 29, par. 903(5).   It is intolerable for one in Bailey's position to allow  members of its sales force to collect unemploy­ment compen­sation but then assert that those individuals are not employees when the Director brings an enforcement action for unpaid unem­ployment insurance contributions.  If Bailey shares (indirect­ly) the bene­fits of unemployment insurance, it must share the burdens of unemploy­ment insurance.  Section 2202 accordingly requires Bailey to liti­gate the issue of status as an employee at its first op­portu­nity to do so.  The decision involving salesman Larry Thomp­son became final before the circuit court's decision in this case and as such became binding upon the circuit court.  

I do not see that any undue burden is placed on Bailey "if 100 former sales staff of Bailey applied for unemployment" as the majority suggests.  Slip op. at 14.  It is true there is no mutual­i­ty of estoppel between Bailey and its sales force.  If Bailey won the first case, other members of the sales staff could still file their own claims alleging that they were employees.  Once employ­ee status is found to exist, however, that controls all the remain­ing cases, so long as the services in the remaining cases were rendered "under circum­stanc­es substan­tially the same" as those in the first case.  820 ILCS 405/2202 (West 1994).  Of course, once Bailey begins paying contributions for the salespeo­ple it becomes very difficult to argue the salespeo­ple are not employees when they file claims.  Even if Bailey is being sub­ject­ed to "offen­sive collat­er­al estoppel," the legis­la­ture has deter­mined, in section 2202, that that is appro­priate.  

Finally, I disagree with the majority's holding that section 3(5) should be applied retroactively.  It does appear that the supreme court has adopted a new test for determining whether leg­is­la­tion should be retroactive or prospec­tive.  "[T]he better ap­proach is to apply the law that applies by its terms at the time of the appeal, unless doing so would inter­fere with a vested right."  
First of America Trust Co.
, 171 Ill. 2d at 289, 664 N.E.2d at 39.  A retro­active change in the law is one that takes away or impairs vested rights acquired under ex­isting laws, or creates a new obligation, impos­es a new duty, or atta­ches a new disabili­ty in respect of trans­actions or consider­ations al­ready past.  
First of America Trust Co.
, 171 Ill. 2d at 290, 664 N.E.2d at 40.  As the majori­ty points out, the Depart­ment has consis­tently held camp­ground mem­ber­ship sales personnel were not "inde­pendent contrac­tors."  Slip op at 15.  The legisla­ture was not overturn­ing a ran­dom in­cor­rect inter­pre­tation when it enacted section 3(5), it was im­posing a new duty or obli­gation on the Department in re­spect of transac­tions or consider­ations al­ready past.  Sec­tion 3(5) should be applied prospectively.