**DRL ENTERPRISES, INC., Plaintiff,**

v.

**ePARTNERS, INC., Defendant.**

**No. 01 C 6423.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 28, 2001.

Charles S. Bergen, Gary M. Miller, Grippo & Elden, Chicago, IL, for plaintiff.

Michael P. Tone, Michael Gerard Bruton, Ross, Dixon & Bell, L.L.P., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

As this Court had requested, each of the parties has submitted a current letter memorandum (cited here as "Mem.") addressing the motion of ePartners, Inc. ("ePartners") to dismiss Count I of the Complaint brought against it by DRL Enterprises, Inc. ("DRL")—a claim purporting to sound in the Illinois Consumer Fraud and Deceptive Business Practices Act ("Act," 815 ILCS 505/1 to 505/12, cited simply "Act § —" without the prefatory "815 ILCS 505/"). For the reasons stated in this memorandum opinion and order, ePartners' motion to dismiss is granted.

There has been considerable caselaw dealing with the construction of the Act as it was amended more than a decade ago to provide that "proof of public injury, a pattern, or an effect on consumers generally shall not be required" (Act § 10a(a)).[1] Because none of those cases has come from the Illinois Supreme Court, however, no

Illinois decision can be pointed to as definitive. This Court must perforce look to the existing less-than-definitive holdings and discussions, including any appropriate inferences from those sources.

For its part, DRL Mem. 2 cites to a number of Illinois Appellate Court cases that it says stand for this proposition (emphasis added by DRL):

> The "consumer nexus" test discussed in ePartners' brief—requiring proof of trade practices addressed to the public generally or implicating consumer protection concerns—by its own terms only applies "when a dispute under the Act includes two businesses *that are not consumers of each others' products*."

But that statement impermissibly inserts the word "only," even though *none* of the cited cases says just that. Instead each of the cited Illinois cases announces the applicability of the "consumer nexus" test where the directly quoted language applies, but none of them speaks expressly to the question whether a "consumer nexus" test may *also* apply to a case such as this one.

On that score our Court of Appeals has spoken to the subject in just such global terms. *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996) upheld the post-Act-amendment dismissal of a claim under the Act because "[t]here is nothing that would comply with the requirements that these trade practices be directed to the market generally or implicate consumer protection concerns." And *Athey, id.* at 436–37 went on to state:

> This amendment was passed to clarify that a plaintiff suing under the Act could state a claim based upon a single, isolat-

---

1. Act § 10a(a) has since been amended to replace that sentence with one specifying the classes of cases in which such proof *is* required. That amendment does not change the impact of the 1990 amendment quoted in the text on cases such as this one.

ed injury, and based solely upon the plaintiff's own injury. *See Rubin v. Marshall Field & Co.*, 232 Ill.App.3d 522, 173 Ill.Dec. 714, 720, 597 N.E.2d 688, 694 (1992). In *Heath*, we found that the 1990 amendment to the Act was to be applied retroactively, but did not decide what type of injury was required to be alleged under the Act. 9 F.3d at 574–75. In diversity cases, we look to Illinois courts' reading of the Act to decide the issue. Although the Illinois Supreme Court has not had occasion to speak to the subject, the intermediate appellate courts have. Those courts and federal district courts in Illinois have uniformly held that claims under the Act must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns. *See Lake County Grading Co. v. Advance Mechanical Contractors, Inc.*, 275 Ill.App.3d 452, 211 Ill.Dec. 299, 305–06, 654 N.E.2d 1109, 1115–16 (1995); *Scarsdale Builders, Inc. v. Ryland Group, Inc.*, 911 F.Supp. 337, 340 (N.D.Ill.1996);[2] *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F.Supp. 316, 322 (N.D.Ill.1995). Athey has failed to allege the necessary nexus between the complained of conduct and consumer protection concerns, and therefore summary judgment was properly granted to Harris on Athey's claim under the Deceptive Practices Act.

▇▇▇ Unlike some of its respected colleagues who have departed from *Athey*'s

teaching on the ground that its above-quoted statement "is far too broad" (*Anchor Mortgage Corp. v. Certified Credit Reporting, Inc.*, No. 00 C 4248, 2000 WL 1700147, at *4 n. 1 (N.D.Ill. Nov. 8, 2000), agreed with and followed in *Nakajima All Co. v. SL Ventures Corp.*, No. 00 C 6594, 2001 WL 641415, at *3 n. 3 (N.D. Ill. June 4, 2001)), this Court considers itself to be bound by what our Court of Appeals has said in its reasoned analysis on the subject—at least until either the Illinois Supreme Court or the Court of Appeals itself states a narrower principle of the type urged by DRL. It may be that future developments will demonstrate that *Athey* has portrayed Illinois law inaccurately. But in this Court's view responsible jurisprudence calls for a District Court, even if it may disagree with an opinion from its Court of Appeals, to adhere to and follow that opinion.[3]

As for DRL's contention that its attempted Act-based claim "is not simply a 'run-of-the-mill' breach of contract action and the consumer nexus test does not apply" (its Mem. 4), that position is wholly unpersuasive. What DRL seeks to do is to characterize its claim as not involving "false promise" or "fraudulent breach of contract," but rather as being predicated on "false representations" by ePartners. Any such claimed differentiation based on the facts set out in the pleadings involves an attenuated distinction without a difference, and it does not take this case out of

---

**2.** [Footnote by this Court] *Scarsdale* was an opinion by this Court that, while it recognized some degree of illogic in the reading of the post-amendment Act to embody a broad-scale "consumer nexus" requirement, reached that conclusion in reliance on the pronouncement in the *Lake County Grading* case.

**3.** This is not to say, of course, that a District Court may not voice its disagreement (includ-

ing making a respectful recommendation for change) even while following the Court of Appeals' lead. Indeed, this Court has done so in the past, with at least one such instance having ultimately resulted in the United States Supreme Court's reversal of the Court of Appeals' position in favor of the differing view expressed by this Court.

the category requiring a "consumer nexus."

Accordingly ePartners' motion to dismiss DRL's Count I is granted. It should of course be added that this ruling is subject to reexamination if future authoritative caselaw were to point in a different direction.