(No. 65485.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIAM BADOUD *et al.*, Appellees.

*Opinion filed March 23, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, William E. Herzog, State's Attorney, of Kankakee, and Tony Brasel, State's Attorney, of Watseka (Kenneth R. Boyle, John X. Breslin, and Terry A. Mertel, of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Adrienne W. Albrecht, of Sacks, Albrecht & Copeland, of Kankakee, for appellee William Badoud.

Steven Tongren, of Clinton & Tongren, of Peotone, for appellee Kenneth Jones.

JUSTICE CUNNINGHAM delivered the opinion of the court:

In these consolidated cases, defendants, William Badoud, Robert Kiger, J. F. Quigley, Betty Marshall, James Fleming, Walter Gray, James Andrew Grubbs, Kenneth Jones, Michael McNerny, Kevin Palmateer, Julie Ann Rawlings, Edwin Winge, Michael Baugus and John Graham, were arrested for driving under the influence of alcohol, and a breath test of each defendant disclosed an unlawful concentration of alcohol.

The circuit court, Kankakee and Iroquois Counties, notified each defendant that pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1), his or her license would be suspended. Pursuant to section 2—118.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1), each defendant requested that before the effective date of the suspension a judicial hearing be held. Each defendant was granted a hearing, and in each case the judge presiding at the hearing vacated the summary suspension. The appellate court consolidated the cases for appeal and affirmed the judgments of the circuit courts (155 Ill. App. 3d 912). Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted the People leave to appeal.

Section 2—118.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1) sets forth certain issues to which a summary suspension hearing is to be limited. Such issues include whether the defendant was arrested (upon reasonable grounds) for driving under the influence of an unlawful drug, whether he was properly advised of the consequences of refusing to take an appropriate chemical test (or failing such test), and whether the results of any such test indicate an unlawful concentration of alcohol. The suspension hearings in these causes, however, did not focus upon any of the above issues. Rather, the focus of each hearing was on a provision of section 11—501.1(d) of the Code that the arresting officer "shall immediately submit a sworn report" to the Secretary of State and circuit court of venue after the arrested driver refuses or fails an appropriate test.

The defendants in each cause contended that the report filed by each arresting officer, although labeled a "sworn report," was not actually a sworn report because it was not affirmed before an individual licensed to administer oaths. The circuit courts vacated the suspen-

sions on this basis, and the appellate court agreed that the reports did not comply with the statute.

We must first consider whether the circuit court was precluded at the hearing from considering deficiencies in the sworn report. As indicated previously, section 2—118.1 sets forth limitations on the breadth of the hearing. However, we do not believe that the General Assembly intended to preclude at the hearing inquiry into whether the report was properly sworn. This is indicated in part by the fact that section 2—118.1 states that the hearing "may be conducted upon a review of the law enforcement officer's own official reports." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) It would seem incongruous to permit conducting a hearing based on a report and yet not permit examination of whether the report was properly sworn. Moreover, in this expedited proceeding the sworn report also serves a function analogous to a complaint in an ordinary civil proceeding. Section 2—118.1 states that the hearing is to proceed in the same manner as in other civil proceedings, and in an ordinary civil proceeding a circuit court is not precluded from examining and permitting amendment to the complaint. For these reasons we conclude that the circuit court could properly consider whether the report was sworn to in accordance with the statute.

We next consider whether there has been strict compliance with the "sworn report" provision of section 11—501.1(d) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(d)). The reports at issue herein were each signed by the arresting officer below the following notation: "I do solemnly, sincerely, and truly declare and affirm that [certain statutory requirements of section 11—501.1 have been met]." The report did not, however, provide space for the officer to swear under oath before an official authorized to administer an oath.

The General Assembly has enacted a law specifically addressing oaths and affirmations. (Ill. Rev. Stat. 1985, ch. 101, pars. 1 through 6.) In these provisions the General Assembly has specified certain persons who are authorized to administer oaths and affirmations and has specified that such oaths and affirmations shall subject to perjury charges any person swearing falsely. Statutes should be construed in conjunction with other statutes addressing the same subject (*Spring Hill Cemetery v. Ryan* (1960), 20 Ill. 2d 608) and considering the evident long-standing legislative recognition of the importance of perjury sanctions as an assurance of veracity, we simply cannot conclude that the reports submitted by the officers in these causes were "sworn" reports. In using the term "sworn report," the General Assembly contemplated that a report would be signed under the pains and penalties of perjury.

Also supporting our conclusion regarding legislative intent is the rule that generally an amendatory act is to be interpreted as continuing in effect (as previously judicially construed) the unchanged portions thereof. (*Gaither v. Lager* (1954), 2 Ill. 2d 293, 300; see also *Johnson v. Industrial Comm'n* (1972), 53 Ill. 2d 23, 26.) This rule is based on a presumed legislative awareness of the judicial construction of the earlier version of the statute. (*Gaither v. Lager* (1954), 2 Ill. 2d 293, 301.) The term "sworn report" as used in section 11—501.1 has been judicially applied in numerous cases. These cases have consistently assumed without extensive discussion that in using the term the General Assembly contemplated an oath, affirmation or verification made under the penalties of perjury. (See, *e.g., People v. Gaddi* (1986), 145 Ill. App. 3d 227; *People v. Newberry* (1984), 121 Ill. App. 3d 1069; *People v. Matulis* (1983), 117 Ill. App. 3d 876; *People v. Rehfeldt* (1982), 103 Ill. App. 3d 368.) During this same span of time and even more re-

cently the General Assembly has made numerous additions and revisions in the Code, many of which encompassed section 11—501.1. Despite these changes the General Assembly has not altered the judicial conclusion that the report is to be signed under penalty of perjury.

Not only has the General Assembly failed to refute the courts' conclusions that the term "sworn report" contemplates a signature under penalty of perjury, but a very recent amendment to the Code explicitly addresses and confirms this judicial conclusion. By Public Act 85—992 (1987 Ill. Laws 4632), the General Assembly has, *inter alia*, explicitly defined the term "sworn report" as "[a] confirmation of correctness and truth by an affidavit, oath, deposition or a verification by certification executed pursuant to Section 1—109 of the Code of Civil Procedure." This amendment is extremely relevant to the instant causes. The reason is that an amendment to a statute is an appropriate source for determining the original legislative intent of the statute. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543; *People v. Scott* (1974), 57 Ill. 2d 353, 358.) Where, as here, an amendment is enacted soon after controversies have arisen regarding the statute amended, it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute. (*People v. Rink* (1983), 97 Ill. 2d 533, 541.) Although the legislature may not by amendment alter the outcome of a final judgment in which the statute was interpreted (*Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1; *People v. Rink* (1983), 97 Ill. 2d 533), the amendment herein strongly indicates that the General Assembly, in initially using the term "sworn report" in section 11—501.1, was contemplating a report signed under penalty of perjury.

Although this amendment defining the term "sworn report" clearly indicates an earlier intent that the report be signed under penalty of perjury, the amendment

raises the question as to whether the General Assembly originally intended section 1—109 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 1—109) to apply to the "sworn report" provisions. It seems apparent that this was the original intent, in view of the obvious administrative difficulties posed if the officers, before filing their reports, were required to take each report to a person authorized to administer oaths, and in view of the fact that summary suspension hearings are to "proceed in the court in the same manner as in other civil proceedings." (See section 2—118.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1).) However, we need not conclusively determine whether section 1—109 of the Code of Civil Procedure applies to the instant causes, since the sworn report in each of them failed to comply with section 1—109.

A wholly distinct concern from determining the meaning of the term "sworn report" is determining the consequences of an officer's failure to initially swear to his report. Pointing to the language of section 11—501.1(d) that an arresting officer *"shall immediately* submit a sworn report" to the Secretary of State and circuit court of venue, some defendants submit that the initial failure to swear to a report ends the matter and necessitates dismissing the charges. Other defendants contend that the initial error can be corrected but that the correction must be made before the suspension is recorded. We must determine whether the General Assembly intended an officer's initial failure to swear to the report to be curable and, if so, whether the use of sworn testimony at the hearings is a proper way of curing the deficiency.

By Public Act 84—272 (1985 Ill. Laws 2409), effective January 1, 1986, section 11—501.1 was amended. To determine the consequences of an officer's failure to initially swear to his report in accordance with section 11—

501.1(d), we find it helpful to examine the statutory language as it existed prior to January 1, 1986, the judicial interpretations of that language, and the legislative responses to those interpretations.

Immediately prior to the effective date of Public Act 84—272, section 11—501.1 provided for summary license suspension of only drivers who refused a proper request for a chemical test, not drivers who failed such a test. Under former section 11—501.1, the arresting officer was to submit a sworn report regarding the arrest procedure and refusal to the clerk of the circuit court of venue. The clerk was then to issue the driver notice that unless within 28 days he requested a hearing, his license would be suspended. Only after the hearing or, if none, the lapse of 28 days would the circuit court notify the Secretary of State to suspend the license.

Courts applying former section 11—501.1(d) repeatedly indicated that an officer's initial failure to swear to the report could be cured by having the officer swear to the contents of the report in court. (See, *e.g.*, *People v. Gaddi* (1986), 145 Ill. App. 3d 227; *People v. Newberry* (1984), 121 Ill. App. 3d 1069; *People v. Rehfeldt* (1982), 103 Ill. App. 3d 368.) In subsequently amending section 11—501.1, the General Assembly was presumably aware of these decisions (*Gaither v. Lager* (1954), 2 Ill. 2d 293, 301), and we must determine whether the General Assembly intended to negate those holdings in any pertinent respect.

In amending section 11—501.1 by Public Act 84—272, the General Assembly provided, *inter alia*, that an arresting officer is to prepare a sworn report regardless of whether the driver refuses *or fails* a chemical test. The officer is to immediately submit this report not only to the circuit clerk but also to the Secretary of State (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). Upon receipt of the report, the Secretary of State is to enter the stat-

utory summary suspension, which is to take effect 46 days after the driver's receipt of a suspension notice (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(e)). A hearing is provided for in section 2—118.1 (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1) but there is now no provision for delaying a suspension until a hearing is held.

Defendants submit that these amendments evince a legislative intent to make strict compliance with the sworn report provision mandatory. As support for this contention defendants note in particular that the word "immediately" was inserted before the words "submit a sworn report." This, they contend, was inserted to emphasize that the officer's oath is to be taken immediately and that the act of swearing to the report later in open court will not suffice. It is in this same sentence, however, that the General Assembly altered the route by which the Secretary of State receives notice of the offense. Under the prior statute, the officer notified the circuit clerk, who much later notified the Secretary of State. Under the new provision, the officer immediately submits the report to the Secretary of State. It seems apparent that, in providing that the officer shall "immediately" submit a sworn report to the Secretary of State, the General Assembly was simply emphasizing the new means by which the Secretary of State would receive the report, rather than altering judicial holdings that the deficiency in the report can be cured.

Considering the presumed legislative awareness of and acquiescence in our appellate court's pertinent applications of former section 11—501.1, and further considering the seriousness of the public hazard to which the summary suspension legislation is addressed, we conclude that the General Assembly intended an officer's good-faith failure to initially swear to the report to be curable. This interpretation fosters the accomplishment

of the legislation's obvious objective of protecting individuals using the roads in this State.

We next consider whether an initial failure to swear to the report must be corrected *before* the Secretary of State can enter the suspension. We conclude that this is not essential.

Clearly the General Assembly intended that the report be sworn when the Secretary of State receives it and enters the suspension. In fact, the General Assembly has recently added a provision (effective January 1, 1987) directing the Secretary of State to return an unsworn report for correction before entering the suspension. (See Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 11—501.1.) But we do not believe that the General Assembly intended to be void a suspension entered upon a report which is unsworn but which the officer has "solemnly, sincerely and truly" declared is accurate. Rather, we believe that the summary suspension provisions should be liberally construed to accomplish the General Assembly's obvious purpose of fostering highway safety, and we believe that the legislative objective would be thwarted by holding void suspensions such as those occurring in the instant cases. The most reasonable interpretation of the statutory scheme is that, while it permits a defendant to insist on having an unsworn report corrected, it does not permit him to escape responsibility for drunk driving by pointing to this technical deficiency in the completion of the officer's report.

We next consider the argument that even if the oath can be added to the report after the suspension is entered the oath must still be added *prior to* the hearing. Considering that the General Assembly obviously intended suspension hearings to be expedited (see Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1), and considering the fact that requiring prehearing amendments to the sworn

report could delay the hearing date, we see no impropriety in swearing to the report at the hearing.

It is well settled that if reasonably possible we must avoid construing a statute in such a way as to render it unconstitutional. (*People v. Davis* (1982), 93 Ill. 2d 155, 161.) However, we have recently rejected assertions that section 11—501.1 violates the constitutional dictates of equal protection and procedural due process (*People v. Esposito* (1988), 121 Ill. 2d 491), and our interpretation and application here of the section 11—501.1 "sworn report" provision fully comports with our constitutional analysis in *Esposito*.

Our interpretation of the "sworn report" provision obviously is of no consequence to our holding in *Esposito* that section 11—501.1 does not classify persons in a manner violative of the equal protection provisions of the United States and Illinois Constitutions. We are also convinced that our interpretation of the "sworn report" provision does not alter the validity of our conclusion in *Esposito* that section 11—501.1 facially complies with procedural due process requirements. In this regard we have considered whether, even though these defendants were afforded an *opportunity* for a predeprivation hearing (which some postponed beyond the suspension's effective date by seeking a continuance), we must nevertheless hold section 11—501.1 unconstitutional because a defendant *could* lose his driving privileges on the basis of an unsworn report before a hearing.

Pertinent to this procedural due process inquiry is *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612, which construed a summary suspension statute similar in many respects to the one involved here. Under the statute applied in *Mackey*, a driver could have his license suspended prior to a hearing (available promptly thereafter) based upon a police officer's sworn report (endorsed by the police chief). The re-

port was to indicate grounds for the officer's belief that the defendant was intoxicated, and was to further indicate that the driver refused to submit to a chemical test.

In *Mackey*, the court stated that a suspension of a driver's license for a statutorily defined cause implicates due process and further stated that a determination of what process is due requires a balancing of the following three considerations:

" '[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " 443 U.S. 1, 10, 61 L. Ed. 2d 321, 329, 99 S. Ct. 2612, 2617, quoting *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.

Regarding the first consideration, the private interest affected, we note (as we did in *Esposito*) that the length of any prehearing deprivation would be only brief, and would be determined largely by the defendant's diligence in seeking a hearing. The suspension does not become effective until 46 days after the notice (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(g)), and the defendant is entitled to a hearing within 30 days of his request (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1).

Regarding the public interest in the procedure used and the value of additional safeguards, we note (as in *Esposito*) that the suspension procedure is well suited to promote the compelling interest in public safety. The procedure not only promptly removes a particularly dangerous class of drivers from the highways but also deters others from driving while intoxicated.

Regarding the risk of erroneous deprivation, we note many safeguards inherent in the procedure, safeguards similar to those present in *Mackey*. In discussing safeguards against erroneous deprivation, the *Mackey* Court did acknowledge that the signing of the report under oath exposed the officer to criminal sanctions for false statements. However, the Court also noted other assurances of the truth and accuracy of the officer's report, assurances which also exist here. For example, the Court observed that false statements on the report could expose the officer to civil liability for false arrest. The Court also noted that the predicates for a license suspension under the statute are objective facts within the personal knowledge of, or readily ascertainable by, the officer, whom the Court deemed an impartial governmental official. The Court further observed that the officer, by reason of his training and experience, is well suited for the role which the statute affords him.

Thus, the signing of the report under penalty of perjury is not the only or even the primary safeguard against erroneous deprivation. Considering the additional safeguards, and further considering the other two facets of the *Mackey* due process test, we are not persuaded that a temporary suspension based on an unsworn report would violate procedural due process.

For the foregoing reasons, we find that the appellate court erred in upholding the rescission of the summary suspensions in these cases. The People should have been permitted to amend the reports at the hearings by having the arresting officers swear to the reports' truth and accuracy. Accordingly, the decision of the appellate court is reversed and the causes remanded to the circuit courts so that the suspension hearings may be conducted consistent with this opinion.

*Reversed and remanded.*