# Illinois Official Reports

## Appellate Court

---

### *People v. Swanson*, 2021 IL App (3d) 190196

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KYLE D. SWANSON, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-19-0196 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | July 1, 2021<br><br>July 20, 2021<br>July 20, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 19-DT-2; the Hon. Bennet Braun, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ted P. Hammel and Kristen Messamore, of Hammel Law Offices, P.C., and Frank P. Andreano, of Andreano Law, P.C., both of Joliet, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Jamie L. Bellah, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.

Justices Lytton and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1    The defendant, Kyle D. Swanson, appeals from the denial of his petition to rescind statutory summary suspension, arguing that he was denied due process and his petition to dismiss and rescind his statutory summary suspension should have been granted.

¶ 2                                    I. BACKGROUND

¶ 3    On December 29, 2018, the defendant was ticketed for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)). At this time, the defendant was also served a Notice of Summary Suspension, which stated that the defendant's license would be suspended for a minimum of 12 months because he refused to submit to or failed to complete testing. The notice said:

"The suspension/revocation shall take effect on the 46th day following the issuance of this notice. Subsequent to an arrest for violating Section 11-501 of the Illinois Vehicle Code, or similar provision of a local ordinance or Section 11-401 of the Illinois Vehicle Code, you are hereby notified that on the date shown above, you were asked to submit to a chemical test(s) to determine the alcohol, other drug(s), intoxicating compound(s), or any combination thereof, content of your breath, blood, urine or other bodily substance and warned of the consequences pursuant to Section 11-501.1 of the Illinois Vehicle Code. You have the right to a hearing to contest your suspension/revocation. You must file a petition to rescind your suspension/revocation within 90 days of this notice."

The officer wrote on the notice that he had reasonable grounds to believe the defendant had violated section 11-501 because the defendant (1) was called in as a drunk driver, (2) committed multiple traffic violations, (3) had bloodshot and glassy eyes, (4) had a strong odor of an alcoholic beverage that emanated from his breath, (5) admitted to drinking before driving, (6) attempted to flee and elude police, and (7) was involved in an accident. The forty-sixth day after he received the notice would be February 13, 2019.

¶ 4    On January 8, 2019, the defendant filed a motion for substitution of judge. The defendant also filed a petition to rescind statutory summary suspension. The motion for substitution of judge was granted on January 10, 2019. The case was continued to March 7, 2019, for reassignment and for setting a hearing on the defendant's petition to rescind. On March 7, defense counsel sought to withdraw the petition to rescind because there was no confirmation of the summary suspension in the court file but stated that he did not "want to get into that argument today." Specifically, defense counsel stated that he wanted to withdraw the demand because, "There is no confirmation, there is no suspension, I can't proceed." Defense counsel asked the court to acknowledge that there was no confirmation in the court file. The State said there was not. The court then stated, "Well, my understanding is it doesn't matter whether there is a confirmation in the court file or not. It's whether the Secretary of State has confirmed the suspension." The State said it would contact its liaison in the Secretary of State's office.

¶ 5       On March 11, 2019, the defendant filed an Emergency Motion to Dismiss and Rescind the Statutory Summary Suspension. The motion stated that the defendant had contacted the Secretary of State after February 13, 2019, and again in early March 2019, and was told that the record did not indicate that his license was suspended. However, on March 11, 2019, the defendant's license was listed as suspended as of February 13, 2019.

¶ 6       The parties appeared on March 13, 2019, on the defendant's emergency motion. The State said that it had sent a sworn report to the Secretary of State's office on March 7, 2019. The State believed that the officer had too, though the officer was not present in court. The court denied the emergency motion to dismiss and rescind. The defendant filed a motion to reconsider, which was denied.

¶ 7       A confirmation of the suspension from the Secretary of State was filed on March 14, 2019. The confirmation stated that the defendant's license was suspended on February 13, 2019, and that the provisional reinstatement date was February 13, 2020. Included with the confirmation was a letter stating that the defendant was automatically enrolled in the Secretary of State's Monitoring Device Driving Permit (MDDP) program. The letter stated that the only way to opt out of the program was to complete an opt-out form before a judge.

¶ 8       A hearing on the defendant's petition to rescind his statutory summary suspension was held on April 2, 2019. Officer Kirsh Szwajnos stated that he was employed with the Romeoville Police Department, arrested the defendant on the date in question, and subsequently met up with him at the hospital. The defendant was inside a hospital room at around 1:45 a.m., when Szwajnos prepared a warning to motorist. He read the warning to motorist verbatim to the defendant. The defendant was conscious and lucid the entire time Szwajnos read the warning. Szwajnos then had the defendant sign the warning to motorist. Szwajnos asked the defendant to take a blood or urine test, but the defendant refused, saying, "No, my lawyer will handle it." The court denied the petition to rescind and the defendant's subsequent motion to reconsider.

¶ 9                                         II. ANALYSIS

¶ 10      On appeal, the defendant challenges the denial of the motion to dismiss and rescind his statutory summary suspension. Specifically, the defendant argues that his due process rights were violated. At the outset, we note that the documents in the record from the Secretary of State provide that the provisional date of reinstatement of the defendant's license was February 13, 2020. If, as this document states, the defendant's license was reinstated in 2020, this appeal is moot. "An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. However, an exception to the mootness doctrine exists where the issue is capable of repetition yet evades review. *In re Alfred H.H.*, 233 Ill. 2d 345, 358 (2009). Courts have used this exception when a defendant appeals his statutory summary suspension (see *People v. Meece*, 162 Ill. App. 3d 658, 660 (1987); *People v. Boyd*, 211 Ill. App. 3d 99, 100 (1991)), and we will do so here.

¶ 11      Section 11-501.1 of the Illinois Vehicle Code concerns statutory driver's license suspensions. 625 ILCS 5/11-501.1 (West 2018). When a motorist is arrested for DUI, the arresting officer shall ask the motorist to submit to a chemical test. *Id.* § 11-501.1(a). If the defendant refuses, the officer must provide the motorist with a notice of summary suspension. *Id.* § 11-501.1(d). The officer then submits a sworn report to the Secretary of State and the circuit court. *Id.* The statute further states, "The statutory summary suspension or revocation

and disqualification referred to in this Section shall take effect on the 46th day following the date the notice of the statutory summary suspension or revocation was given to the person." *Id.* § 11-501.1(g). This suspension takes place *automatically*. *People v. Guillermo*, 2016 IL App (1st) 151799, ¶ 11; *People v. Eidel*, 319 Ill. App. 3d 496, 503 (2001). Stated another way, "section 11-501(g) is a self-executing provision under which summary suspension automatically begins 46 days following the time—here, the arrest itself—the officer serves the motorist with notice that the motorist's license is to be suspended." *People v. Morales*, 2015 IL App (1st) 131207, ¶ 22.

¶ 12 Section 11-501.1(h) states:

"Upon receipt of the sworn report from the law enforcement officer, the Secretary of State shall confirm the statutory summary suspension or revocation by mailing a notice of the effective date of the suspension or revocation to the person and the court of venue. The Secretary of State shall also mail notice of the effective date of the disqualification to the person. However, should the sworn report be defective by not containing sufficient information or be completed in error, the confirmation of the statutory summary suspension or revocation shall not be mailed to the person or entered to the record; instead, the sworn report shall be forwarded to the court of venue with a copy returned to the issuing agency identifying any defect." 625 ILCS 5/11-501.1(h) (West 2018).

¶ 13 A motorist may seek recission of the summary suspension of their license by making a written request within 90 days of receiving the notice of summary suspension. *Id.* § 2-118.1(b). A hearing on the request must be conducted within 30 days of its filing. *Id.* However, any delay attributable to the defendant within this period suspends the running of the 30 days within which the hearing must be held. *Guillermo*, 2016 IL App (1st) 151799, ¶ 25; *People v. Cosenza*, 215 Ill. 2d 308, 316 (2005).

¶ 14 The defendant argues that his due process rights were violated because it appears that the officer did not immediately send a copy of the notice of summary suspension to the Secretary of State and the confirmation of the suspension did not come until after the suspension was set to begin. We disagree.

¶ 15 While a driver's license is a protectable property interest for purposes of the due process clause, due process in this situation solely requires notice and the chance to be heard at a post-suspension hearing. *Dixon v. Love*, 431 U.S. 105, 112 (1977); *Mackey v. Montrym*, 443 U.S. 1, 11 (1979); *People v. Gerke*, 156 Ill. App. 3d 43, 48 (1987); *Morales*, 2015 IL App (1st) 131207, ¶¶ 23-24. First, the notice of summary suspension given to the defendant by the officer provided "clear notice that his driver's license would be suspended 46 days after the day of his arrest." *Morales*, 2015 IL App (1st) 131207, ¶ 21. The fact that the defendant received the confirmation after his suspension was set to begin and his driving abstract did not show that he was suspended until after the fact is of no consequence. See *id.* ¶ 23; *People v. O'Neil*, 329 Ill. App. 3d 213, 215-17 (2002) (the defendant's due process rights were not affected when the Secretary of State confirmed the suspension of the defendant's driving privileges more than five months after the defendant received notice that his driving privileges would be suspended 46 days after his arrest); *People v. Moen*, 323 Ill. App. 3d 713, 716-17 (2001) (the defendant was not denied due process where the confirmation of the suspension was not filed until 67 days after he was stopped). The confirmation was not needed to provide notice to the defendant because the defendant received the notice of suspension and the suspension would

automatically occur on the forty-sixth day after issuance of the notice. *Morales*, 2015 IL App (1st) 131207, ¶¶ 22-23; *Guillermo*, 2016 IL App (1st) 151799, ¶¶ 16-17.

¶ 16    Second, the defendant was given the opportunity to be heard at a hearing. Our supreme court has stated that the hearing can be held either pre- or post-suspension. *People v. Esposito*, 121 Ill. 2d 491, 507 (1988). Here, the defendant filed his petition to rescind and a motion for substitution of judge on January 8, 2019. The motion for substitution of judge was granted on January 10, 2019, and the case was continued, on the defendant's motion, to March 7, 2019, for reassignment. The hearing on the petition to rescind was held on April 2, 2019. Thus, the hearing on the petition was within the required 30 days as the defendant had tolled the clock by filing a motion for substitution of judge. Before the hearing, the defendant had received the confirmation of summary suspension from the Secretary of State.

¶ 17    We find *People v. Madden*, 273 Ill. App. 3d 114 (1995), factually distinguishable from the instant case. In *Madden*, this court held that the defendant's statutory summary suspension should have been rescinded because his petition to rescind was not heard within 30 days. *Id.* at 116. Here, the defendant tolled the 30-day requirement by filing a motion for substitution of judge, and his petition was heard within the 30-day period. Moreover, the defendant had the confirmation at the time of the hearing. Had the defendant not tolled the 30-day period and the hearing been held outside of the 30 days, the disposition in this case may have been different. Because we find *Madden* not applicable, we also find that the circuit court did not err by failing to apply it, as the defendant argues in his brief.

¶ 18    Moreover, the fact that the State, rather than the officer, sent the sworn report to the Secretary of State is not fatal. We find *People v. Badoud*, 122 Ill. 2d 50 (1988), and *People v. Dominguez*, 367 Ill. App. 3d 171 (2006), particularly applicable here. In *Badoud*, the officer's report was not sworn to as required by statute. *Badoud*, 122 Ill. 2d at 53-54. Our supreme court held that such was not fatal to the suspension of the defendant's license, stating, "[W]e conclude that the General Assembly intended an officer's good-faith failure to initially swear to the report to be curable. This interpretation fosters the accomplishment of the legislation's obvious objective of protecting individuals using the roads in this State." *Id.* at 59-60. The court went on to state that the report did not need to be corrected before the Secretary of State could enter a suspension, noting:

"[W]e believe that the summary suspension provisions should be liberally construed to accomplish the General Assembly's obvious purpose of fostering highway safety, and we believe that the legislative objective would be thwarted by holding void suspensions such as those occurring in the instant cases. The most reasonable interpretation of the statutory scheme is that, while it permits a defendant to insist on having an unsworn report corrected, it does not permit him to escape responsibility for drunk driving by pointing to this technical deficiency in the completion of the officer's report." *Id.* at 60.

¶ 19    Our court applied *Badoud* to a situation where the officer failed to provide a copy of the sworn report to the circuit court in *Dominguez*. *Dominguez*, 367 Ill. App. 3d at 175. The court stated that the failure to provide the circuit court a copy of the report was a technical deficiency that could be cured and that the statute and *Badoud* did "not permit a defendant to escape responsibility for driving under the influence of alcohol or drugs by pointing to a technical deficiency in the completion of an officer's duties." *Id.*

¶ 20    Like in *Badoud* and *Dominguez*, we must liberally construe the statutory summary suspension provision and find that the failure of the officer to send the report to the Secretary

of State was not fatal and was cured by the State sending a copy. The statute "does not allow a defendant to engage in a game of technical 'gotcha' to avoid the statutory summary suspension." *Id.* As stated above, the defendant drove drunk, refused to submit to chemical testing, was provided notice that his license would be automatically suspended in 46 days, and received an opportunity to be heard at a hearing. His due process rights were not violated, and the court did not err in upholding the summary suspension.

¶ 21 In coming to this conclusion, we note that the defendant spends an entire page of his brief discussing the MDDP. While there may have been a slight delay in the defendant's ability to receive the MDDP, nothing in the record shows that the defendant was unable to receive an MDDP or that the procedures that took place hindered his ability to receive one. In fact, the record includes a letter from the Secretary of State, sent before the petition to rescind was heard, that specifically states that the defendant was eligible for an MDDP, was automatically enrolled in the program, and could only opt out by filling out a form before a judge.

¶ 22 Further, we reject the defendant's argument that the State needed to provide him further notice when it gave the sworn report to the Secretary of State. In so arguing, the defendant attempts to analogize the notice of summary suspension to the notice requirements in the Landlord and Tenant Act (765 ILCS 705/0.01 *et seq.* (West 2018)). We refuse to entertain such a stretch. As the defendant received notice that his license would automatically be suspended, we find that it makes no difference whether the sworn report was sent by the officer or the State.

¶ 23                                III. CONCLUSION
¶ 24 The judgment of the circuit court of Will County is affirmed.

¶ 25 Affirmed.